# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE: | C/A No. 11-03630-DD |
| Mt. Zion Holiness Church, | Chapter 11 |
| Debtor. | **ORDER ON MOTION TO DISMISS** |

This matter is before the Court on a Motion to Dismiss ("Motion") filed by Branch Banking & Trust Company ("BB&T") on August 8, 2011. Mt. Zion Holiness Church ("Debtor") filed a Reply to BB&T's Motion on August 29, 2011. A hearing was held September 6, 2011. Following the hearing, the Court took the matter under advisement. After further consideration of the issues, the Court makes the following Findings of Fact and Conclusions of Law.

## **FINDINGS OF FACT**

Debtor filed for chapter 11 protection on June 4, 2011. Debtor is a church located on Broad Street in Darlington, South Carolina. The tax assessment value for the building is listed on Debtor's Schedules at $257,500; however, Mr. Frierson, the pastor of Debtor, testified at the hearing on BB&T's Motion that he believed the value of the building and land was between $150,000 and $170,000 due to its age and condition. Mr. Frierson testified that the church had the normal features of a church building, including a sanctuary, classrooms, offices, and a kitchen and dining area. Mr. Frierson testified that the church's membership had fluctuated greatly, but at one point had dwindled to as few as 17 members. He testified that the church currently had approximately 28 active members.

The only debt, secured or unsecured, listed on Debtor's Schedules is a mortgage on the church building held by BB&T in the approximate amount of $137,676.34. At the hearing, the parties agreed that no payments had been made to BB&T on this debt since summer 2010. The

mortgage was originally executed in 2000 by the Trustees of Debtor. The original term of the loan was for 30 years. However, since 2000, the loan has been modified numerous times due to the church's continuous struggle to make payments. BB&T commenced foreclosure proceedings in August 2009, after Debtor was denied a further modification of the loan. The loan matured in 2010. Mr. Frierson testified that the purpose of the chapter 11 filing was to save the property.

Debtor's Schedule I shows monthly net income of $2,799.33. Testimony presented at the hearing was that offering income for July totaled $2,904.00. Debtor's Schedule J shows expenses of $2,676.00 per month. However, this expense amount includes $400 per month in pastor salary and $1,276 per month in mortgage payments. Mr. Frierson testified that he was not drawing a salary, and the parties agreed that Debtor is not currently making any payments to BB&T. Mr. Frierson estimated that Debtor's monthly utility costs were around $380, monthly telephone cost was around $60, and monthly insurance cost was $260. Mr. Frierson testified that the church did not incur any other expenses on a monthly basis.

Much of the hearing centered around Debtor's failure to provide financial information both to its attorney and to BB&T.[1] Debtor filed a monthly operating report for June, but has not filed a monthly operating report for July. Debtor failed to provide bank statements to its attorney, despite repeated requests for the documents. Debtor also failed to respond to a subpoena from BB&T which requested bank statements and financial information from Debtor. Mr. Frierson testified that Debtor had been trying to send financial information to BB&T's attorney as well as Debtor's attorney but that for some reason neither attorney had received the

---

[1] Debtor's attorney filed a Motion to Withdraw as Attorney on July 21, 2011. That Motion was also scheduled for a hearing on September 6, 2011; however, Debtor's attorney withdrew the Motion on the record, presumably based on Mr. Frierson's promises that Debtor would provide its attorney with the requested financial information within a week.

information. Mr. Frierson testified that he thought Debtor would be able to get the requested financial information to both attorneys within a week.

## CONCLUSIONS OF LAW

BB&T argues in its Motion that Debtor's chapter 11 bankruptcy was filed for the sole purpose of delaying BB&T's foreclosure efforts. As a result, BB&T argues that Debtor's bankruptcy was filed in bad faith and should be dismissed. Debtor denies that the chapter 11 was filed in bad faith and requests an opportunity to propose a chapter 11 plan.

11 U.S.C. § 1112 does not explicitly authorize dismissal of a debtor's bankruptcy case on the grounds of bad faith. *In re Dorn*, No. 10-00951-dd, 2010 WL 5437238, at *2 (Bankr. D.S.C. Mar. 12, 2010). Nevertheless, a bankruptcy case filed in bad faith is subject to dismissal. *See id.* The Fourth Circuit has set forth a two-prong test for courts to use in determining whether to dismiss a debtor's case for lack of good faith. This test requires a showing of both objective futility and subjective bad faith. *Carolin Corp. v. Miller (In re Carolin Corp.)*, 886 F.2d 693, 700–01 (4th Cir. 1989). Both prongs of the test must be proven for dismissal to be warranted. *Id.* Courts must "exercise great care and caution prior to entering an order of dismissal for bad faith." *Dorn*, 2010 WL 5437238, at *2 (citing *Carolin Corp. v. Miller (In re Carolin Corp.)*, 886 F.2d 693, 700 (4th Cir. 1989)). The Court will consider the evidence relating to both prongs separately below.

### I. Subjective Bad Faith

The purpose of the subjective bad faith inquiry is to ensure that the debtor is attempting to use the Bankruptcy Code to reorganize, rehabilitate, or preserve an existing or ongoing business rather than to simply delay collection efforts by creditors. *Carolin Corp.*, 886 F.2d at

702. This Court has previously provided a non-exclusive list of factors for a court to consider in examining a debtor's subjective bad faith:

(1) The debtor has one asset;

(2) Secured creditors' liens encumber the asset;

(3) There are generally no employees except for the principals and there is no ongoing business activity;

(4) The debtor has little or no cash flow and no available sources of income to sustain a plan of reorganization or make adequate protection payments;

(5) There are few, if any, unsecured creditors whose claims are relatively small;

(6) There are allegations of wrongdoing by the debtor or its principals;

(7) The timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of secured creditors to enforce their rights;

(8) The debtor is afflicted with the "new debtor syndrome" in which a one asset entity is created or revitalized on the eve of foreclosure to isolate the insolvent property and its creditors;

(9) There is no realistic possibility of reorganization of the debtor's business;

(10) The reorganization essentially involves a two-party dispute; and

(11) Bankruptcy offers the only possibility of forestalling loss of the property.

*Dorn*, 2010 WL 5437238, at *3. In Debtor's case, many of these factors are met. Debtor's primary asset is the church building; aside from some furnishings, Debtor has no other assets. BB&T, the only secured creditor in the case, has a lien on the building. Debtor has no employees; Mr. Frierson, the pastor of Debtor, testified that even he is not drawing a salary.

There are no unsecured creditors in the case; thus, the case is merely a dispute between BB&T and Debtor.

The Court also finds it relevant to the subjective bad faith inquiry that Debtor has failed, despite repeated requests from both its attorney and BB&T's attorney, to provide necessary financial information. Mr. Frierson testified at the hearing that he believed the financial information had not been received due to Debtor's use of an incorrect fax number and promised to get the requested information to Debtor's attorney by the beginning of the following week. However, Debtor has been in its chapter 11 case for three months and therefore has had numerous opportunities to provide requested financial information. Debtor's attorney even filed a Motion to Withdraw as Attorney in an attempt to prompt Debtor to provide him with the financial information he needed, but this was, as yet, to no avail. Debtor's repeated failure to provide requested financial information to its attorney and BB&T is an additional factor evidencing subjective bad faith. The Court finds subjective bad faith on the part of Debtor.

**II.     Objective Futility**

"The objective futility test focuses on whether a realistic possibility of an effective reorganization exists." *Dorn*, 2010 WL 5437238, at *2. In the present case, BB&T is the only secured creditor, and there are also no unsecured creditors. As a result, in order to attain confirmation of its chapter 11 plan, Debtor must obtain BB&T's acceptance. *See* 11 U.S.C. § 1129(a)(7). Debtor's attorney stated at the hearing that the purpose of the chapter 11 filing was to further modify Debtor's loan with BB&T. However, BB&T's loan has matured, and BB&T has indicated it is unwilling to agree to a further modification or extension of Debtor's loan. Further, at the hearing BB&T argued that Debtor did not have the financial ability to make plan payments sufficient to repay its loan, and no evidence was presented by Debtor to show a

continued ability to fund the plan.  It appears that BB&T will not accept Debtor's plan, whatever it proposes.  Because Debtor will be unable to obtain BB&T's acceptance, Debtor will not be able to confirm a plan.  Debtor's chapter 11 case is objectively futile.

## **CONCLUSION**

For the reasons stated above, the Court finds that Debtor's chapter 11 case does not meet the Fourth Circuit test for a good faith filing.  As a result, the case must be dismissed.  BB&T's Motion to Dismiss is granted.  Debtor's chapter 11 case is dismissed.

AND IT IS SO ORDERED.

**FILED BY THE COURT**
**09/13/2011**



Entered: 09/14/2011

David R. Duncan
US Bankruptcy Judge
District of South Carolina